# In the United States Court of Federal Claims

No. 23-680
(Filed: 31 August 2023[*])

****************************************
HARMONIA HOLDINGS GROUP, LLC, &ast;
&ast;
&ast;     Plaintiff, &ast;
&ast;
v. &ast;
&ast;
THE UNITED STATES, &ast;
&ast;
&ast;     Defendant, &ast;
&ast;
and &ast;
&ast;
SPATIAL FRONT, INC., &ast;
&ast;
&ast;    Defendant-Intervenor. &ast;
&ast;
****************************************

*Jon D. Levin*, with whom were *W. Brad English*, *Emily J. Chancey*, *Joshua B. Duvall*, and *Nicholas P. Greer*, Maynard Nexsen PC, all of Huntsville, AL, for plaintiff.

*Christopher L. Harlow*, Trial Attorney, with whom were *Douglas K. Mickle*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, and *Jean Wulff*, Senior Attorney, Federal Motor Carrier Safety Administration, Department of Transportation, all of Washington, DC, for defendant.

*Eric A. Valle*, with whom were *Jonathan T. Williams*, *Katherine B. Burrows*, *Jacqueline K. Unger*, and *Dozier L. Gardner, Jr.*, PilieroMazza PLLC, all of Washington, DC, for defendant-intervenor.

## **MEMORANDUM OPINION**

**HOLTE, Judge.**

   Plaintiff Harmonia Holdings Group, LLC brings this post-award bid protest challenging

---

[*] This Opinion was originally filed under seal on 15 August 2023 pursuant to the Protective Order in this case. The Court provided the parties an opportunity to review this Opinion for any proprietary, confidential, or other protected information and submit proposed redactions. The parties proposed redactions on 22 August 2023. The Court accepts the proposed redactions and reissues the Opinion with redacted language replaced as follows: "[XXXXX]."

the U.S. Department of Transportation's award of a firm-fixed price software development services task order to intervenor Spatial Front, Inc. Plaintiff alleges the government's evaluation of plaintiff's and intervenor's proposals, its price evaluation, and its source selection and best value decision were all arbitrary and capricious. Plaintiff seeks to permanently enjoin the Department of Transportation from awarding the contract. Following agreement from the parties at oral argument regarding the agency's urgent need to begin contract performance to protect against cyberattacks, the Court entered a short order: (1) denying plaintiff's Motion for Judgment on the Administrative Record; (2) granting the government's Cross-Motion for Judgment on the Administrative Record; and (3) granting intervenor's Cross-Motion for Judgment on the Administrative Record. The Court now sets forth its reasoning.

## I.    Factual Background

### A.    The Solicitation

On 9 February 2023, the Federal Motor Carrier Safety Administration ("FMCSA") issued Request for Quote No. 693JJ423Q0000008 ("RFQ") to award a firm-fixed price software development services task order to a vendor holding a Software Engineering Services ("SWES") Blanket Purchase Agreement ("BPA"). AR at 33–34. The RFQ stated "[t]he Contractor shall provide necessary software development services to operate, maintain and enhance its portfolio of applications supporting the registration of motor carriers and maintaining their active registration in accordance with the Statement [of] Objectives (SOO) titled IT Software Analysis and Testing (SWAT) Team – Registration Program." AR at 34 (RFQ). Section 12.1 of the RFQ indicated FMCSA would award one vendor "whose quote offers an integrated approach for meeting the requirements of the Statement of Objectives and [was] evaluated as the best overall offer for [FMCSA], price and other non-price factors considered." AR at 71 (RFQ). FMCSA identified three evaluation factors to determine whose offer represents the best value:

- Factor 1: Technical Quote – Technical Approach
- Factor 2: Key Personnel
- Factor 3: Price Evaluation

*Id.* For clarity, the RFQ states "[e]valuation [f]actors are listed in descending order of importance with Technical Approach being more important than Key Personnel. Price will be considered in making a best value determination; however, it is not a weighted factor." *Id.*

Section 11.7.1 clarified the requirements of the technical quote requested from each potential vendor. AR at 67–68 (RFQ). In the technical quote, the offeror was required to "[d]emonstrat[e] . . . complete understanding of the Statement of Objectives." AR at 68 (RFQ). FMCSA specified with respect to Factor 1: "Technical Approach," the offeror shall provide the following, among other things: (1) a full description of its "Technical Approach" compliant with the SOO, (2) specific procedures for each task and sub-task, and (3) demonstration of an efficient use of the offeror's resources. *Id.* For Factor 2: "Key Personnel," "[t]he offeror shall propose a team with appropriate knowledge, skills and abilities to support FMCSA's goals and objectives." *Id.* Specifically with respect to each offeror's personnel, the offeror shall provide the following, among other things: (1) their qualifications, (2) details of their "competencies and experience in

performing work of similar size and scope to that outlined in the SOO," and (3) a description of their role in the project. *Id.* FMCSA also required the vendor to provide "specifics about the level of effort invested in the project by all staff proposed for this project." *Id.* The suggested breakdown of labor categories was provided as follows:

| Labor Category | Key Personnel |
|---|---|
| Software Developer - Lead | Yes |
| Software Developer - Senior | Yes |
| Software Developer - Mid | No |
| Quality Assurance Specialist – Mid | No |
| Business Analyst - Senior | Yes |

*Id.* With respect to the labor categories designated "Key Personnel" the Court provided the following table and preceding language: "The Key Personnel, at a minimum, under this Task Order are:"

| Labor Category | Key Personnel | Required Minimum Qualifications |
|---|---|---|
| Software Developer - Lead | Yes | 10+ years of software development experience.  5+ years of experience leading software development teams.  Experience with database technologies, team collaboration tools, e.g. JIRA, and deployment platforms, e.g. Jenkins or Git.  3–5 years' experience with AWS technologies preferred. |
| Software Developer - Senior | Yes | 10+ years of software development experience.  Experience with database technologies, team collaboration tools, e.g. JIRA, and deployment platforms, e.g. Jenkins or Git. 3-5 years' experience with AWS technologies preferred. |
| Business Analyst - Senior | Yes | 5+ years of experience serving as a business analyst on software development projects.  Demonstrated experience leading requirements gathering sessions, analyzing business flows, and documenting user needs. |

AR at 80 (RFQ).

The RFQ also provided "[a]ny information given to a prospective offeror concerning th[e] solicitation," such as questions and answers, "w[ould] be furnished promptly to other prospective offerors as an amendment to the solicitation." AR at 67 (RFQ). Therefore, FMCSA provided offerors with amendments to the solicitation after various vendors asked questions. AR at 104–08 (First List of Vendor Questions and FMCSA Resps. ("First FMCSA Resps.")). FMCSA indicated for the labor category "Software Developer – Mid" the level of effort was estimated to be three full-time equivalents ("FTEs") and for each of the other labor categories, one FTE. AR at 104 (First FMCSA Resps.). This amounted to a total of seven FTEs with respect to FMCSA's estimated total level of effort. AR at 113 (Second List of Vendor Questions and FMCSA Resps. ("Second FMCSA Resps.")). Two other amendments to the solicitation were produced from questions 17 and 34: an offeror was entitled to deviate from the specific

SWES labor categories provided, AR at 106 (First FMCSA Resps.), and was entitled to propose using labor categories not listed in the solicitation, AR at 108 (First FMCSA Resps.)

Section 11.7.2 clarified the requirements of the price/business quote requested from each potential vendor.  AR at 69 (RFQ).  FMCSA clarified Factor 3: Price Evaluation by indicating the offeror's submission must meet the following requirements, among others:  (1) the offeror must "submit its proposed price in accordance with the solicitation and as aligned with the [o]fferor's SWES contract," (2) the offeror must "provide a price quote that reflects its proposed solution," and (3) "the price to perform the work shall be based on the tasks described in the [SOO]:  Base Year (12 months); Two (2) 12-month Option Years."  *Id.*  The solicitation is pursuant to FAR Subpart 8.4 rather than FAR Part 15.  AR at 33 (RFQ) ("Conducted under Federal Acquisition Regulation (FAR) 8.4"); FAR 8.405-2(d) ("If an unsuccessful offeror requests information on an award that was based on factors other than price alone, a brief explanation of the basis for the award decision shall be provided.").

### B.      Plaintiff's Proposal

Harmonia proposed utilizing a "[XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXX]", and various software methods to fulfill the requirements of the solicitation on the technical front.  AR at 222 (Harmonia Quote).  Plaintiff's proposal explained:

[XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]

AR at 223 (Harmonia Quote).  Harmonia's quote proposed a team of five including:  (1) a senior software developer; (2) a lead software developer; (3) a senior full-stack developer; (4) a mid-level full-stack developer; and (5) a senior business analyst.  AR at 229 (Harmonia Quote). FMCSA's suggested team compares to Harmonia's proposed team as follows:

| FMCSA's Suggested Team | Harmonia's Proposed Team |
|---|---|
| Software Developer – Lead | Software Developer – Lead |
| Software Developer – Senior | Software Developer – Senior |
| Software Developer – Mid | Full Stack Developer – Senior |
| Software Developer – Mid | Full Stack Developer – Mid |
| Software Developer – Mid | Business Analyst – Senior |
| Business Analyst – Senior | |
| Quality Assurance Specialist – Mid | |

AR at 113 (FMCSA Resp.); AR at 229 (Harmonia Quote).

Harmonia explained the two full-stack developers would "[XXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]" AR at 229 (Harmonia Quote). Harmonia proposed the senior business analyst would "[XXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXX]." *Id.* Plaintiff based its level of effort on its prior experience "[XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]." *Id.* Harmonia also provided the following to explain its deviation from FMCSA's estimated seven FTE team:

> [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXX]

AR at 222. "We work with DOT stakeholders to groom and prioritize the backlog to give high value items priority." AR at 228.

> [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXX]

AR at 222.

> [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]

*Id.*

> [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
> XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]

[XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXX]

AR at 228.

### C.    The Evaluation

The RFQ stated the agency would evaluate whether "[t]he Quote includes a satisfactory level of understanding of the technical requirements and tasks listed in the SOO and [has] a strong and proven technical approach for performing the requirements."  AR at 72 (RFQ).  The RFQ required the TEP to evaluate whether the bidder could adequately perform the required tasks of the solicitation.  *See* AR at 128 (Quote Evaluation Plan for SWAT Team – Registration Program); AR at 360 (Harmonia Evaluation).  To evaluate "Key Personnel," the agency indicated it would determine "the degree to which their qualifications meet or exceed the government's needs."  AR at 72 (RFQ).  The RFQ required the agency to evaluate whether the proposed "Key Personnel" were "adequate and appropriate" to "lead to the successful completion of all requirements within the solicitation."  AR at 72.  In section 12.1, FMCSA provided a description of the evaluation method:  "After evaluation of all non-price factors, the Technical Evaluation Team/Panel [('TET' or 'TEP')] [would] assign a single confidence rating for each quote . . . [and] assess its level of confidence that the offering contractor [would] successfully perform all requirements regarding technical capabilities and approach."  AR at 71 (RFQ).

| **High Confidence** | The Government has High Confidence that the Offeror understands the requirement, proposes a sound approach, and will be successful in performing the contract with ***little or no*** Government intervention. |
|---|---|
| **Some Confidence** | The Government has Some Confidence that the Offeror understands the requirement, proposes a sound approach, and will be successful in performing the contract with ***some*** Government intervention. |
| **Low Confidence** | The Government has Low Confidence that the Offeror understands the requirement, proposes a sound approach, or will be successful in performing the contract ***even with*** Government intervention. |

*Id.*  On 8 March 2023, FMCSA released its confidence ratings for the six technical quotes received from potential vendors.  AR at 355 (Technical Evaluation Team Summary Report ("TEP Report")).  The TEP assigned an overall confidence rating based on an evaluation of the two weighted factors ("Technical Approach" and "Key Personnel") in each offeror's proposal.  *Id.*  In accordance with evaluation criteria specified in the RFQ, the TEP indicated whether certain criterion "Increases Confidence" ("IC"), "Decreases Confidence" ("DC"), or posed a "Risk" ("R") with respect to each offeror's proposal.  AR at 355–67 (TEP Report).  The results are as follows, including the count of each area of IC, DC, or R:

| Offeror | Evaluation Factors | | Overall Rating |
| --- | --- | --- | --- |
| | Factor 1:<br>Technical<br>Approach | Factor 2:<br>Key Personnel | |
| [XXXXXX XXXXXXX XXXXXXXX] | High Confidence | Low Confidence | Some Confidence |
| | IC: 5 \| DC: 0 \| R: 0 | IC: 1 \| DC: 3 \| R:1 | |
| [XXXXXXXXXXXX XXXXXXXXXXXX] | Some Confidence | Low Confidence | Some Confidence |
| | IC: 2 \| DC: 4 \| R: 1 | IC: 1 \| DC: 4 \| R: 1 | |
| Harmonia Holdings Group, LLC ("Harmonia") | Low Confidence | High Confidence | Low Confidence |
| | IC: 0 \| DC: 2 \| R:1 | IC: 3 \| DC: 1 \| R: 0 | |
| Spatial Front, Inc. ("SFI") | High Confidence | High Confidence | High Confidence |
| | IC: 4 \| DC: 0 \| R: 0 | IC: 5 \| DC: 0 \| R: 0 | |
| [XXXXXXXXX XXXXX] | Some Confidence | Some Confidence | Some Confidence |
| | IC: 3 \| DC: 1[1] \| R: 1 | IC: 2 \| DC: 3 \| R: 1 | |
| [XX] | Some Confidence | Low Confidence | Some Confidence |
| | IC: 0 \| DC: 3 \| R: 1 | IC: 2 \| DC: 1 \| R: 2 | |
| *IC: Increases Confidence \| DC: Decreases Confidence \| R: Risk* | | | |

AR at 355–67 (TEP Report); *see also* Pl.'s Mot. J. Admin. R. ("Pl.'s MJAR") at 5, 9. Additionally, on 15 March 2023, FMCSA released its price analysis comparing each offeror's price quotes with the Independent Government Cost Estimate ("IGCE"). AR at 368 (TEP Report). The solicitation provides "[t]he Government w[ould] evaluate the proposed prices to

---

[1] The TEP listed only one area of decreased confidence for [XXX]. In an apparent typographical error, however, the TEP listed this area beside the number "3." *See* AR at 364.

determine if the prices [were] fair and reasonable for the work proposed, in accordance with the contractor's SWES Pricing Schedule, reflect[ed] a clear understanding of the requirements, and [were] consistent with the methods of performance described in the quotes technical approach." AR at 72 (RFQ).  The results are as follows:

| Offeror | Cost (Total) |
|---|---|
| IGCE | [XXXXXXX] |
| [XXXXXXXXX] | [XXXXXXX] |
| [XXXXXX] | [XXXXXXX] |
| Harmonia | [XXXXXXX] |
| SFI | [XXXXXXX] |
| [XXX] | [XXXXXXX] |
| [XX] | [XXXXXXX] |

AR at 368 tbl.3 (TEP Report).

In its evaluation of Harmonia's proposal, the TEP awarded Harmonia:  (1) a "Low Confidence" rating for Factor 1 – "Technical Approach"; (2) a "High Confidence" rating for Factor 2 – "Key Personnel"; and (3) a "Low Confidence" rating overall.  AR at 360 (Harmonia Evaluation).

For Factor 1 – "Technical Approach," the TEP indicated it observed no elements of Harmonia's proposal which increased its confidence.  *Id.*  The TEP indicated two elements which decreased the TEP's confidence:

1. Pages 8 through 10, Section 3 - The offeror proposes a team of 5 FTEs instead of the government's estimated team of 7 FTEs, as provided in the government's questions and answers (first response document, answer to question #1; and second response document, answer to question #12).  Based on the offeror's proposal, the government is unable to determine the benefits of having a smaller team, which reduces capacity, and introduces a risk to the offeror's ability to meet the RFQ and SOO requirements and objectives.

2. Page 8 - The offeror proposes a team without a QA role, where other members of the team will write automation tests to support the quality assurance process and perform additional ad hoc testing.  This spreads the team of 5 even more thin, which reduces software development capacity, and presents a significant performance risk to the program.

*Id.*  The TEP also identified a "Risk" associated with Harmonia's "Technical Approach" noting "[r]educed capacity could place the program at "Risk" of not meeting its objectives." *Id.*

For Factor 2 – "Key Personnel," the TEP found three elements of Harmonia's proposed "Key Personnel" increased its confidence in plaintiff's proposal:

1. Page 11, Section 5 – The Software Developer – Lead has [XXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX].
2. Page 13, Section 5 – The Software Developer – Senior's resume demonstrates [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX].
3. Page 15, Section [5] – The Business Analyst – Senior has [XXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXX].  The experience discusses their role in [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXX].

AR at 360–61 (Harmonia Evaluation).  The TEP indicated one area of Harmonia's proposal which decreased its confidence:  "Pages 11–16, Section 5 - The offeror's proposed key personnel (all 3) [were] not employees of the offeror. Such an approach [did] not demonstrate an existing and available talent pool to service the objectives of the SOO." AR a 361 (Harmonia Evaluation).  The TEP identified no "Risks" associated with Harmonia's proposed "Key Personnel." *Id.*

For Factor 3 – Price Evaluation, FMCSA compared Harmonia's price quote to the IGCE. AR at 369 (Price Evaluation).  FMCSA found "the offeror's price [was] unreasonable and [did] not demonstrate a clear understanding of the requirements." *Id.*   For explanation, FMCSA provided:

> The offeror proposed a discount of approximately [XX] across all labor categories for the base year. For the overall cost proposed during the base and two (2) option years, the offeror's cost is [XXXXXX], which is approximately [XX] lower than the government's IGCE. The lower cost can be attributed to the offeror proposing two (2) less FTEs and having some low proposed labor rates.

*Id.*

In its Award Memorandum, FMCSA provided the following about Harmonia:

> Harmonia's Technical Approach received a Low Confidence rating.  The offeror proposed a team of 5 FTE instead of the Governments estimated team of 7 FTE. The approach offered no explanation nor outlined any benefit of a smaller team. Further the offeror did not have an essential QA role for automation test support deducing a reduced software development capacity.  While the offeror received a High Confidence rating for Key Personnel, based on the collective years of experience, at the time of submission none of the key personnel were current employees to the offeror.   The deficiency in the offerors available talent pool reduced the assurance to execute the Technical Approach. Harmonia received an overall rating of Low Confidence.

AR at 415 (Award Memorandum).

Ultimately, FMCSA concluded Harmonia did not provide the best value to FMCSA based on (1) its "Low Confidence" rating by the TEP, (2) its proposed team of five FTEs, as opposed to the government's IGCE of seven, and (3) a price which FMCSA indicated was "unreasonable and [did] not demonstrate a clear understanding of the requirements." AR at 369 (Price Evaluation). Contrastingly, FMCSA concluded SFI did provide the best value to FMCSA based on (1) its "High Confidence" rating by the TEP, (2) its proposed team with labor categories and hours consistent with the government's IGCE, and (3) its price, which FMCSA described as "fair and reasonable." *Id.*

## II.   Procedural History

On 8 May 2023, plaintiff Harmonia filed under seal its Complaint in this post-award bid protest, ECF No. 1. Concurrently with its Complaint, plaintiff submitted: (1) a motion for a preliminary injunction, ECF No. 2; (2) a motion for leave to file under seal, ECF No. 3; and (3) a motion for a protective order, ECF No. 4. On 9 May 2023, the Court scheduled an initial status conference. Order, ECF No. 11. On 10 May 2023, the government and plaintiff filed a joint status report ("JSR") proposing a schedule for proceedings in this case and informing the Court of the government's positions on plaintiff's pending motions. Joint Status Report, ECF No. 12. The awardee, SFI, filed an unopposed motion to intervene the same day. Spatial Front, Inc.'s Unopposed Mot. to Intervene, ECF No. 13.

On 10 May 2023, the Court also held a telephonic status conference. Order, ECF No. 15. The same day, the Court subsequently (1) adopted the parties' proposed briefing schedule; (2) granted SFI's Unopposed Motion to Intervene; (3) granted plaintiff's Motion for Leave to File Under Seal; (4) found as moot plaintiff's Motion for a Preliminary Injunction; and (5) required plaintiff to file an unopposed motion to enter the Form Protective Order with additional specified provisions. *See id.*

On 17 May 2023, the parties filed a joint motion for entry of a protective order. Order, ECF No. 18. In an order on 19 May 2023, the Court granted the parties' motion, found as moot plaintiff's initial Motion for a Protective Order, and entered the Protective Order. *See* Order, ECF No. 19; Protective Order, ECF No. 20. On the same day, the government filed the Administrative Record ("AR"), ECF No. 26. Plaintiff filed a motion for judgment on the administrative record ("MJAR") on 2 June 2023, ECF No. 33. On 12 June 2023, plaintiff then filed an amended and restated complaint, ECF No. 34. On 16 June 2023, intervenor and the government each filed a cross-MJAR and response to plaintiff's MJAR, ECF Nos. 37, 38. On 23 June 2023, plaintiff filed a reply and response to the government's MJAR, ECF No. 40. On 30 June 2023, intervenor and the government each filed a reply, ECF Nos. 43, 44. The Court held oral argument on 27 July 2023. *See* 27 July 2023 Oral Arg. Tr. ("Tr."), ECF No. 50.

## III.   Parties' Arguments

### A.   Evaluation of Quotes

Plaintiff contends FMCSA erred in its evaluation of plaintiff's quote by:  (1) mechanically applying a staffing estimate; (2) assigning a "Decreases Confidence" for a team lacking a Quality Assurance role; (3) assigning a "Risk" for the team size and lack of Quality Assurance role; and (4) assigning a "Decreases Confidence" because plaintiff's proposed "Key Personnel" were not current employees.  Pl.'s MJAR at 15–23.  Plaintiff further alleges FMCSA erred in its evaluation of intervenor's quote by improperly crediting intervenor's previous experience with FMCSA and by failing to assess a performance risk against intervenor related to its performance of another contract.  *Id.* at 23–26.  The government asserts "Harmonia repeatedly mischaracterizes FMCSA's evaluation methodology" and "Harmonia's substantive arguments represent mere disagreement with the agency's technical assessments."  Gov't's Cross-MJAR at 7.  Intervenor contends Harmonia misrepresents the circumstances surrounding its performance of the other contract and states FMCSA's assessment finding no "Risk" was proper, because the RFQ did not require evaluation of past performance or performance risk.  Int.'s Cross-MJAR at 28–29.

## B.    Price Evaluation

Plaintiff argues the solicitation did not call for a price realism analysis and therefore FMCSA incorrectly performed a price realism analysis on Harmonia.  Pl.'s MJAR at 29–29.  The government asserts the RFQ included language justifying FMCSA's price evaluation, and Harmonia was required to dispute such language prior to the submission deadline.  Gov't's Cross-MJAR at 16–18 (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007)).

## C.    Source Selection and Best Value Determination

Plaintiff argues FMCSA's final overall rating of "Low Confidence" in Harmonia's offer is "facially irrational."  Pl.'s MJAR at 30.  Notwithstanding FAR Part 8, plaintiff asserts FMCSA failed to "articulate a satisfactory explanation for an action to permit effective judicial review."  Pl.'s MJAR at 29 (quoting *DigiFlight, Inc. v. United States*, 165 Fed. Cl. 588, 601 (2023)).  The government contends FMCSA's decision was rational and its documentation exceeds the requirements of FAR Subpart 8.4.  Gov't's Cross-MJAR at 19.  Intervenor argues Harmonia "does not identify any documentation or information" FMCSA failed to include.  Int.'s Cross-MJAR at 38.  Intervenor also explains Harmonia's "Low Confidence" rating in "Technical Approach" ("Factor One") carries more weight than does Harmonia's "High Confidence" rating in "Key Personnel" ("Factor Two").  *Id.* at 39–40.

## D.    Prejudice Against Harmonia

Plaintiff contends "[e]valuated properly, Harmonia would have had fewer weaknesses, more strengths, and no risks . . . [and] SFI would have received fewer strengths."  Pl.'s MJAR at 32.  "With better ratings and the lowest price, [FMCSA] would have been forced to trade off an overall rating of at least 'Some Confidence' against that price."  *Id.* (emphasis omitted).  Plaintiff argues it therefore "had a substantial chance of receiving the award" and was prejudiced.  *Id.*  The government asserts "Harmonia was not prejudiced by any error," Gov't's Cross-MJAR at

22, but rather "Harmonia simply disagrees with FMCSA's assessment that an understaffed team that is multi-tasked with other responsibilities would not be able to successfully perform these tasks," Gov't's Cross-MJAR at 20. Intervenor argues Harmonia ignores the RFQ's weighting of factors, and Harmonia has not shown "but for [FMCSA]'s errors it would have been more highly rated than SFI." Int.'s Cross-MJAR at 42–43.

### E.   Relief Sought

Plaintiff requests a permanent injunction. Pl.'s MJAR at 32. First, plaintiff asserts it will be irreparably harmed due to lost opportunity without a permanent injunction. *Id.* at 33. Second, plaintiff argues the balance of hardships favors plaintiff because its alleged irreparable harm of lost opportunity outweighs FMCSA's possible hardship, which "it could have forestalled . . . by evaluating proposals in a rational manner." *Id.* at 33–34. Finally, plaintiff contends "[a]n injunction serves the public's interest in honest, open, and fair competition as well as its interest in obtaining the best value for its tax dollars." *Id.* at 34. The government argues plaintiff is not entitled to injunctive relief. Gov't's Cross-MJAR at 20–22. The government asserts plaintiff fails on the merits, which implicates the hardship and irreparable harm factors. *Id.* at 21. The government further contends public policy interests weigh against a permanent injunction as plaintiff employed "gamesmanship in the question-and-answer process." *Id.*[2]

## IV.   Applicable Law

When this court evaluates a bid protest, "the inquiry is whether the agency's action was

---

[2] Intervenor requests the Court "find Harmonia has waived certain challenges where it has failed to address the counterarguments in the Cross-MJARs." Int.'s MJAR Reply at 1 (citing *Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 695 (2022)). Specifically, intervenor asserts plaintiff failed to address its arguments: (1) "the evaluation complied with the RFQ," specifically the language "a strong and *proven* technical approach for performing the requirements"; (2) SFI's prior experience is "directly related to the evaluation criteria"; (3) SFI *did* address separate benefits of being an established Agency vendor and having deep Agency domain knowledge within its quote"; (4) "Harmonia provides no authority to support its position that it is improper for an agency to copy language from a quote when identifying strengths"; and (5) "Harmonia presents no evidence SFI . . . would have received a lower rating" but for the alleged errors plaintiff identifies with intervenor's evaluation. Int.'s MJAR Reply at 10–11 (emphases altered). Intervenor further contends "[t]he Court should find Harmonia has waived its argument that the Agency's best value decision was flawed because Harmonia's overall Low Confidence rating was 'patently incorrect' due to Harmonia not addressing that argument in its Response." *Id.* at 16 n.6 (citing *Golden IT*, 157 Fed. Cl. at 695). Intervenor additionally argues "the Court should dismiss Harmonia's new claim—that the SSA failed to perform an 'independent review'—because Harmonia does not once mention 'independent review' or 'independent analysis' in its MJAR, let alone posit the SSA failed to perform such an analysis." *Id.* at 16–17 (first citing *Allicent Tech., LLC v. United States*, 166 Fed. Cl. 77, 78 (2023); and then citing *Ahtna Logistics, LLC v. United States*, 163 Fed. Cl. 488, 516 (2022)). The government also argues plaintiff "abandoned" its argument the overall ratings are arbitrary and capricious based on a "points" system by failing to address the argument in plaintiff's Response and Reply. Gov't's MJAR Reply at 9–10 (citing *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58 (2021)). When questioned at oral argument, the government stated it was not sure if there is any caselaw to support its waiver argument. Tr. at 86:16–25 ("THE COURT: Is there any caselaw to support that if the government raises an issue and plaintiff does not directly address, it is unopposed or waived? [THE GOVERNMENT]: . . . Is there case law on that? I don't know for sure."). Intervenor confirmed at oral argument it does not "have binding caselaw" on the waiver issue. Tr. at 90:14–17 ("THE COURT: Any binding caselaw that there's waiver if an argument is not opposed? [INTERVENOR]: . . . I don't have binding caselaw for you, Your Honor . . . ."). In the absence of binding caselaw, the Court declines to find plaintiff has waived any arguments in briefing. *See* Tr. at 86:16–25, 90:14–17.

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial." *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4)); *see also Sys. Application & Techs., Inc. v. United States*, 100 Fed. Cl. 687, 711 (2011). Arbitrary and capricious means "the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

"[T]he disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011) (citation omitted). The Court's scope of review over agency judgments is narrow, particularly those involving subject-matter experts evaluating the technical merits of a proposal. *Tech. Innovation All. LLC v. United States*, 149 Fed. Cl. 105, 129 (2020). "[T]he Court should not substitute its judgment to assess the relative merits of competing proposals . . . ." *Walden Sec. v. United States*, 136 Fed. Cl. 216, 231 (2018) (citation omitted).

"[T]o prevail in a protest the protestor must show not only a significant error in the procurement process, but also that the error prejudiced it." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996) (citations omitted). The protestor, to establish prejudice, "must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract." *Id.* This requirement is satisfied when "but for the government's alleged error, the protestor would have been 'within the zone of active consideration.'" *Preferred Sys. Sols., Inc. v. United States*, 110 Fed. Cl. 48, 57 (2013) (quoting *Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl. 16, 37 (2010), *aff'd*, 649 F.3d 1320 (Fed. Cir. 2011)). "[T]here is no presumption of prejudice when a protestor demonstrates irrationality in an agency decision. The protestor must show prejudice under the usual standard . . . there is no starting point of presumed prejudice." *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021).

## V.     Whether the Agency Arbitrarily and Capriciously Employed a Mechanical Application of its Proposed Staffing Estimate and Irrationally Assigned a "Risk" for Reduced Capacity

The first issue is the assessment of a "Decreases Confidence" and a "Risk" against Harmonia because it proposed a team with only five FTEs. As the "Decreases Confidence" and the "Risk" have the same basis, the Court evaluates the agency's reasoning for both together. As "Technical Approach" is the most important factor and plaintiff received a "Low Confidence" rating for "Technical Approach," it is unlikely plaintiff's overall "Low Confidence" rating would be irrational if the "Low Confidence" rating for the most important factor is rational. *See infra* Section XI (discussing source selection and best-value determination); AR at 71 (RFQ); AR at 360 (Harmonia Evaluation). Plaintiff agreed at oral argument a ruling against plaintiff on the "Technical Approach" evaluation would make it difficult to establish prejudice on any remaining issue. *See* Tr. at 57:6–11 ("[PLAINTIFF]: . . . [I]f Your Honor is inclined to . . . disagree with

our position on this 'Low Confidence' rating, it's not necessarily clear to me . . . the other ratings, standing alone, can establish prejudice.").

The parties disagree about whether the staffing estimate was a requirement.  Plaintiff alleges the agency, via the SOO, gave bidders latitude to propose labor categories and number of FTEs.  Pl.'s MJAR at 15 (citing AR at 80 (RFQ)).  While the agency provided the staffing estimate of seven FTEs directly in response to plaintiff's question, the agency also provided bidders could deviate from the recommended FTE number and proposed labor categories.  AR at 94 (Harmonia Questions Submission Email); AR at 91 (Synergy Questions Submission Email); AR at 108 (First FMCSA Resps.); AR at 113 (Second FMCSA Resps.).  Harmonia argues if the agency had "put offerors on notice that it *required* seven FTEs (and that number was not strictly an estimate)," then "Harmonia would have had a substantial chance at receiving award."  Pl.'s MJAR Resp. & Reply at 4 (emphasis altered).  Plaintiff, however, conflates a penalty from failure to explain deviation from the estimate with a requirement.  If the staffing estimate were truly a requirement, the agency could have removed both plaintiff and [XXX] from consideration for failure to meet such a requirement, but it did not.  Plaintiff cannot feign unawareness:  when it asked the agency about level of effort, the agency responded with an estimate, and the agency held bidders to either meeting that estimate or providing explanation otherwise.  AR at 94 (Harmonia Questions Submission Email) ("The SOO describes the technology stack in C.3.1, and the activities (requirements intake and software development), but there is no basis of estimating the team size required.  Can the Government please provide its estimated total level of effort (e.g., total FTEs) required?"); AR at 113 (Second FMCSA Resps.) ("Please refer to Section C.6 of the SOO and see below:  Software Developer - Lead (1 FTE); Software Developer - Senior (1 FTE); Software Developer - Mid (3 FTEs); Quality Assurance Specialist – Mid (1 FTE); Business Analyst - Senior (1 FTE)").  The Court finds plaintiff has not shown the agency applied the staffing estimate as a requirement.  *See Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326–27 (Fed. Cir. 2011).

The parties also dispute the adequacy of the agency's staffing estimate.  Plaintiff argues there is no evidence in the record justifying the estimate.  Pl.'s MJAR Resp. & Reply at 7.  This argument, however, invites the Court to "substitute its judgment for that of the agency." *PricewaterhouseCoopers Pub. Sector, LLP v. United States*, 126 Fed. Cl. 328, 350 (2016).  Without evidence to the contrary raised by plaintiff, the Court accepts the expertise of the agency on the scope of work it is requesting.  *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  FMCSA provided specific roles and the number of FTEs for each role it expected was needed to complete the solicited work.  AR at 113 (Second FMCSA Resps.). The Court therefore finds plaintiff has not shown the agency's estimate is inadequate.  *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (explaining agency decisions have been held arbitrary and capricious when the decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise" (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The parties further disagree about whether the agency employed a mechanical application of its staffing estimate.  The agency provided the staffing estimate of seven FTEs directly in response to plaintiff's question regarding the estimated level of effort.  AR at 94 (Harmonia

Questions Submission Email); AR at 113 (First FMCSA Resps.).  In its RFQ, the agency provided the following clause:  "A quote receiving a 'Low Confidence' rating in one or more criteria may be removed from further consideration for award or continued evaluation."  AR at 71 (RFQ).  If the agency considered seven FTEs a requirement, it could have given every bidder with fewer than seven FTEs a "Low Confidence" rating for "Technical Approach" and removed the bidder's proposal from further consideration.  [XXX] and Harmonia proposed teams with fewer than seven FTEs, but the agency awarded [XXX] "Some Confidence" for "Technical Approach," AR at 364 ([XXX] Evaluation), and Harmonia "Low Confidence," AR at 360 (Harmonia Evaluation).  The evaluation explains [XXX]'s quote justified a higher rating because it:  (1) "provides a thorough look into their [XXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]"; (2) "[XXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXX]"; and (3) its "[XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]."  AR at 364 ([XXX] Evaluation); *see also* AR at 298–300, 304 ([XXX] Quote).  The agency did not assign every bidder with fewer than seven FTEs a "Low Confidence" rating, nor did FMCSA decide to remove every bidder with fewer than seven FTEs from further consideration.  AR at 360, 364, 368 (TEP Report).  The AR shows the agency's TEP considered the number of FTEs each bidder proposed, but there is insufficient evidence it employed the staffing estimate as a requirement.  If the agency had employed a mechanical application of its staffing estimate, either no proposals with fewer than seven FTEs would remain, or every proposal deviating from the seven FTEs estimate would have received a "Low Confidence" rating for "Technical Approach."  The Court finds plaintiff has not met its burden of showing there was no rational basis for the agency to consider each bidder's proposed number of FTEs as a factor for rating each bidder's proposed "Technical Approach."  *See Allied Tech.*, 649 F.3d at 1326.

The parties additionally disagree about the agency's use of identical language in its evaluation of [XXX]'s and Harmonia's proposals.  Harmonia and SONA both proposed teams with five rather than seven FTEs.  AR at 360 (Harmonia Evaluation); AR at 364 ([XXX] Evaluation).  The agency explained both [XXX]'s and Harmonia's proposals failed to explain the benefits of employing a smaller team.  *Id.*  The AR also shows the TEP identified more strengths with [XXX]'s staffing strategy than Harmonia's.  AR at 364 ([XXX] Evaluation).  Plaintiff provides no caselaw to support its argument FMCSA "must do more than copy and paste generic language for every company that proposed a technical solution involving less than seven FTEs." Pl.'s MJAR at 20.  If the weakness in the proposal is exactly the same—the facts are the same—and the agency applies the same standard—the rule is the same—it is rational for the agency to use the same language to explain the same weakness—the analysis is the same.  *See Ala. Aircraft*, 586 F.3d at 1375 (explaining courts have found agency decisions to be arbitrary and capricious when the agency "offered an explanation for its decision that runs counter to the evidence before the agency" (quoting *State Farm*, 463 U.S. at 43)).  At oral argument, plaintiff dismissed the TEP's identification of strengths in [XXX]'s proposal because "the [g]overnment should have tethered [the 'Increases Confidences' and 'Decreases Confidence'] together in its evaluation."  Tr. at 40:15–16.  Plaintiff's argument is unsupported by caselaw.  The Court is required to award a high degree of deference to the agency's evaluation.  *Advanced Data Concepts*, 216 F.3d at 1058.  Plaintiff cites no requirement in statute, regulation, or caselaw for the agency to tether its findings justifying a higher technical rating for [XXX] to the specific

point of contention plaintiff has with the agency's evaluation—it was rational for the agency to find smaller teams proposed by both [XXX] and Harmonia "Decrease[] Confidence" in their "Technical Approaches," but independent reasons "Increase[] Confidence" in [XXX]'s based on the record evidence. *See* AR at 360 (Harmonia Evaluation); AR at 364 ([XXX] Evaluation); *Ala. Aircraft*, 586 F.3d at 1375. The Court finds there is a rational basis for the TEP to award [XXX] a higher rating for "Technical Approach" than Harmonia because the agency did not entirely fail to consider an important aspect of the bidder's proposal, offer an explanation that runs counter to the evidence before the agency, or come to a conclusion so implausible it could not be the product of a different view or agency expertise. *Ala. Aircraft*, 586 F.3d at 1375; *Allied Tech.*, 649 F.3d at 1326.

The parties next disagree about plaintiff's reliance on *SDS International* and *Ginn Group* to support its claim this court has found "downgrading based on an estimate in all instances is evidence of mechanical application of the estimate." Pl.'s MJAR at 14. In both *SDS International* and *Ginn Group*, the protesters challenged the agency's reliance on an undisclosed estimate. *SDS Int'l v. United States*, 48 Fed. Cl. 742, 758 (2001); *Ginn Grp., Inc. v. United States*, 159 Fed. Cl. 593, 605–06 (2022). In this case, plaintiff disputes the agency's use of a disclosed estimate. The agency disclosed the estimate in response to a question Harmonia asked. AR at 94 (Harmonia Questions Submission Email); AR at 113 (Second FMCSA Resps.). Plaintiff acknowledges *SDS International* is different from the present case, Tr. at 32:16–24, and it has not provided a case in which this court has held an agency may not rely on a disclosed estimate.[3] *See* Pl.'s MJAR; Pl.'s MJAR Resp. & Reply. An agency's reliance on an undisclosed estimate is entirely different than the agency's reliance on a disclosed estimate, as bidders are on notice and can explain deviations in their proposals. The bidders here were on notice the agency anticipated seven FTEs would be optimal for completion of the solicited work. *See* AR at 113 (Second FMCSA Resps.). Harmonia was particularly on notice because it asked a question regarding the agency's anticipated number of FTEs and labor categories, and the agency responded directly. AR at 94 (Harmonia Questions Submission Email); AR at 113 (Second FMCSA Resps.). The Court disagrees with plaintiff's assertion it is a "red herring" to consider the disclosed nature of the estimate. *See* Pl.'s MJAR Resp. & Reply at 6. The bidders' knowledge of the agency's estimated FTEs supports the agency's application of the estimate. The TEP used the disclosed staffing estimate to ensure each bidder would be able to successfully complete the solicited work. If the bidder did not propose a sufficient team, the TEP considered whether the bidder provided explanation for its decision to deviate from the estimate. AR at 360

---

[3] Plaintiff further cites two decisions from the Government Accountability Office ("GAO") and argues they provide persuasive evidence the agency may not rely on disclosed estimates. Pl.'s MJAR at 14. The first decision, *One Source Energy Services*, however, agrees with this Court: mechanical application of an *undisclosed* staffing estimate would be arbitrary and capricious. *See One Source Energy Servs., Inc.*, B-283445, 2000 CPD ¶ 109 at 11 (Comp. Gen. 1999) ("Here, the record shows that the agency unequivocally determined, but *did not disclose*, that a minimum of 11 full-time, non-supervisory engineers/mechanics were required and that the staffing levels of offerors who proposed less than this number would be considered unacceptable." (emphasis added)). The second decision, *Orion Technology*, noted a staffing estimate was applied mechanically, "even where the variation was seemingly *de minim[is]* in comparison to the overall requirement." *Orion Tech., Inc.*, B-406769; B-406769.2; B-406769.5, 2012 CPD ¶ 268 (Comp. Gen. 2012) (emphasis altered). *Orion Technology* is therefore distinguishable as the agency here gave plaintiff and [XXX] different "Technical Approach" ratings even though both proposed small teams. *See id.*; AR at 360, 364. Plaintiff's cited GAO decisions are therefore not persuasive to the Court as they are both distinguishable from this case. *See One Source Energy Servs.*, B-283445, 2000 CPD ¶ 109 at 11; *Orion Tech.*, B-406769; B-406769.2; B-406769.5, 2012 CPD ¶ 268.

(Harmonia Evaluation); AR at 364 ([XXX] Evaluation).  The disclosed nature of the staffing estimate is meaningful for the Court's evaluation of the agency's application of the estimate. The Court therefore finds *SDS International* and *Ginn Group* are distinguishable.  The Court holds there was a rational basis for the TEP to look for an explanation from the bidders who deviated from the staffing estimate because each bidder was on notice of the estimate.  *See Allied Tech.*, 649 F.3d at 1326.

The parties also disagree about whether plaintiff provided sufficient explanation for its decision to deviate from the agency's suggested seven FTEs.  The agency provided the staffing estimate of seven FTEs directly in response to plaintiff's question.  AR at 94 (Harmonia Questions Submission Email); AR at 113 (Second FMCSA Resps.).  The agency also provided bidders could deviate from the recommended FTE number and proposed labor categories.  *Id.*  In response to the government's argument Harmonia failed to "address[] FMCSA-specific issues" in its quote, Gov't's Cross-MJAR & Resp. at 11, plaintiff argues its quote did reference the solicitation's anticipated workload and other SOO requirements, Pl.'s MJAR Resp. & Reply at 5 (citing AR at 223 (Harmonia Quote)).  Mere recitation of the SOO requirements without quantitative explanation of how plaintiff's smaller team would achieve them—such as providing estimated timelines for specific team members completing specific complexity items during a sprint—does not provide sufficient explanation for plaintiff's smaller team.  *See* AR at 223 (Harmonia Quote) ("[XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXX].").  At oral argument, the Court analogized the plaintiff's obligation to demonstrate its ability to carry out its proposal to a hole digging hypothetical—if a solicitation expects two people are required to dig a hole, but an offeror suggests their one person can dig it, the offeror should also demonstrate or explain in its proposal that only one person can dig it.  *See* Tr. at 46:15–47:24.  In response to the Court's questioning, plaintiff argued its proposal demonstrated plaintiff could perform the required work with five rather than seven FTEs; as evidence, plaintiff pointed the Court to AR 229 (Harmonia Quote) (the "Key Personnel" section of plaintiff's proposal) and Plaintiff's MJAR citations at 17. Under questioning, however, plaintiff agreed it did not quantify or explain the time-saving nature of its smaller-team approach:  "That's obviously not in the quotation . . . ."  Tr. at 53:4–5; Tr. at 47:25–48:10 ("THE COURT:  . . . [D]id plaintiff's proposal say that?  . . . 'I've done it with less, and I can show you we can do it with less'?  [PLAINTIFF]:  I believe they did. . . .  [W]e cite [AR] 229, and I'm looking at our opening brief on page 17, where I did quote it.");  Tr. at 52:24–53:5 ("THE COURT:  So read to me where there is clear quantification of time-saving nature from seven FTEs to five.  [PLAINTIFF]:  Is Your Honor asking me to point out a statement that says we would, therefore, need so many fewer hours to perform these tasks? That's obviously not in the quotation . . . .").  The government further added plaintiff's MJAR "quotes" were actually not quotes from the proposal but instead aspirational paraphrasing.  Tr. at 53:20–55:7 ("THE COURT:  Just to clarify, the block quotes on [MJAR page] 17, [plaintiff], are not block quotes.  They're paraphrasing, I guess.  [PLAINTIFF]:  It looks like it, Your

Honor. . . .  [I]t does not appear that [the government] is incorrect.").  The Court compares the sections of plaintiff's MJAR with the cited AR pages—the difference between plaintiff's MJAR paraphrasing and what was actually said in its proposal is helpful to see what the proposal *did not* say:

| Pl.'s MJAR at 17 (emphases added) | AR (Harmonia Quote) |
| --- | --- |
| Harmonia supplied the "why."  It explained that it: Co-develops value with business users to *avoid more work later* when users don't get the value they want, *meaning fewer FTE*.  (AR at 222, AR at 228.) | "[XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXX]."  AR at 222.  "[XXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXX."  AR at 228. |
| Interleaves user acceptance testing in development sprints (*rather than leaving them to later, requiring more work and more FTE*).  (AR at 222.) | "[XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXX]."  AR at 222. |
| Uses automation, which leads to a situation in which there is no technical debt (work that that the contractor "owes" the Government after a development sprint is done, but which the Government will pay for later on) – meaning money saved, *meaning fewer FTE needed*.  (AR at 222, AR at 228.) | "[XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXX]."  AR at 222.  "[XXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |

| | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX<br>XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX<br>XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX<br>XXXXXXXXX].”  AR at 228. |

While the technical components of plaintiff's MJAR explanations are present in its proposal, the MJAR explanations of how these components are time-saving—“to avoid more work later when users don't get the value they want, meaning fewer FTE”; “rather than leaving them to later, requiring more work and more FTE”; and “(work that that the contractor 'owes' the Government after a development sprint is done, but which the Government will pay for later on) – meaning money saved, meaning fewer FTE needed”—are *not* present in plaintiff's AR citations. *Compare* Pl.'s MJAR at 17, *with* AR at 222, 228 (Harmonia Quote).  As plaintiff's explanations from briefing are not present in the AR, and plaintiff was unable to point to time-saving calculations or explanations in its proposal, the Court finds plaintiff has not shown it provided sufficient explanation for its decision to deviate from the agency's suggested seven FTEs.  *See Allied Tech.*, 649 F.3d at 1326.

The parties further disagree about whether the agency provided sufficient explanation for its "Low Confidence" rating regarding Harmonia's "Technical Approach." To determine the agency's explanation was insufficient, the Court would have to find "the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.” *Ala. Aircraft*, 586 F.3d at 1375.  According to the TEP's evaluation, Harmonia's "Technical Approach" lacked any elements to increase the TEP's confidence in Harmonia's ability to perform the contract.  AR at 360 (Harmonia Evaluation).  The TEP identified a "Risk" associated with Harmonia's proposal consisting of five FTEs because this "reduced capacity could place the program at risk of not meeting its objectives."  *Id.*  There were also two elements of Harmonia's "Technical Approach" that decreased the TEP's confidence:

1. Pages 8 through 10, Section 3 - The offeror proposes a team of 5 FTEs instead of the government's estimated team of 7 FTEs, as provided in the government's questions and answers (first response document, answer to question #1; and second response document, answer to question #12).  *Based on the offeror's proposal, the government is unable to determine the benefits of having a smaller team, which reduces capacity, and introduces a risk to the offeror's ability to meet the RFQ and SOO requirements and objectives.*
2. Page 8 - The offeror proposes a team without a QA role, where other members of the team will write automation tests to support the quality assurance process and perform additional ad hoc testing.  This spreads the team of 5 even more thin, which reduces software development capacity, and presents a significant performance risk to the program.

*Id.* (emphasis added).  The record shows the TEP provided an explanation for its decision to award Harmonia a "Low Confidence" rating for "Technical Approach."  *Id.*  As discussed, plaintiff is unable to show where their proposal adequately justifies a smaller team, so the agency

did not behave irrationally in citing only limited pages of the proposal.[4]  *See* Tr. at 52:24–53:5 ("THE COURT:  So read to me where there is clear quantification of time-saving nature from seven FTEs to five.  [PLAINTIFF]:  Is Your Honor asking me to point out a statement that says we would, therefore, need so many fewer hours to perform these tasks?  That's obviously not in the quotation . . . .").  Plaintiff provides no caselaw requiring more than an explanation from the agency.  The Court therefore finds the agency's explanation is reasonable according to the record because it does not entirely fail to consider an essential element, offer an explanation that runs counter to the evidence provided to the agency, nor is the explanation so implausible that it could not be attributed to a difference in view or the product of agency expertise.  *See Ala. Aircraft*, 586 F.3d at 1375.

The Court holds the agency's "Low Confidence" rating for Harmonia's "Technical Approach" and assignment of "Risk" for reduced capacity was not arbitrary and capricious because the agency did not fail to consider an important aspect of the problem, the agency did not offer an explanation that runs counter to the evidence plaintiff provided, and it was not implausible for the agency to find Harmonia's proposed "Technical Approach" was subpar.  *See id.* at 1375.  The Court finds Harmonia did not provide sufficient explanation for its deviation from the agency's seven FTEs staffing estimate.  The Court therefore finds there was a rational basis for the agency to be concerned about plaintiff's five FTEs proposal and assign a "Low Confidence" rating for its "Technical Approach" and a "Risk" for reduced capacity.  *See Allied Tech.*, 649 F.3d at 1326.

## VI.   Whether the Agency Arbitrarily and Capriciously Assigned a "Decreases Confidence" for Plaintiff's Failure to Include a QA Role

The parties disagree about whether the agency properly assigned a "Decreases Confidence" to Harmonia for lacking a designated QA role.  The agency's solicitation indicated a successful bidder would provide a dedicated QA specialist and three mid-level software developers.  AR at 80 (RFQ); AR at 113 (Second FMCSA Resps.).  The RFQ required the TEP to evaluate whether the bidder could adequately perform the required tasks of the solicitation.  *See* AR at 128 (Quote Evaluation Plan for SWAT Team – Registration Program); AR at 360 (Harmonia Evaluation).  The government's explanation for assigning a "Decreases Confidence" for failure to provide a QA role was as follows:  "The offeror proposes a team without a QA role, where other members of the team will write automation tests to support the quality assurance process and perform additional ad hoc testing.  This spreads the team of 5 even more thin, which reduces software development capacity, and presents a significant performance risk to the program."  AR at 360 (Harmonia Evaluation).  The agency's explanation is interconnected with the first "Decreases Confidence" relating to team size:  "This spreads the *team of 5 even more thin, which reduces software development capacity*, and presents a significant performance risk to the program."  *Id.* (emphasis added).  The agency, however, does not explain why plaintiff's

---

[4] Plaintiff contends the agency erred by citing to the "Key Personnel" section of its proposal in evaluating the "Technical Approach."  Pl.'s MJAR at 16.  The RFQ, however, provided the "Technical Approach" included evaluation of "the proposed organizational and management structure."  AR at 72. Plaintiff's "Key Personnel" section includes information about *all* of plaintiff's proposed personnel.  AR at 228–31 (Harmonia Quote).  The Court therefore finds it was rational for the agency to look to pages of plaintiff's proposal describing "the proposed organizational and management structure" of its team in evaluating "Technical Approach."  *See Ala. Aircraft Indus. Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009).

decision to delegate QA tasks to full-stack developers as opposed to staffing a dedicated QA specialist was less effective. *See id.*; Tr. at 20:1–12 ("THE COURT: . . . Does the FMCSA explain in the AR why having full-stack developers rather than both software developers and then QA specialists is less effective? [THE GOVERNMENT]: Ah, no. . . . [T]hat exact sentence doesn't occur, but we're still talking about the same . . . bullet on AR 360 where they looked at the team that Harmonia had and . . . it raised concerns for them."). If Harmonia had proposed a QA specialist and another software developer rather than two full-stack developers, the software developer would have to take on the development tasks of both of Harmonia's proposed full-stack developers. The SOO listed "Coordinate with the IV&V team to remediate defects and automate regression testing" as a Software Development task, but it did not detail other specific QA tasks such as unit or smoke testing. AR at 79 (SOO). The agency did not require a QA role as part of "[t]he Key Personnel, at a minimum, under this Task Order" but only listed a QA Specialist as an anticipated labor category. *See* AR at 80 (RFQ). If the agency's expertise leads it to prefer QA specialists to full-stack developers for some technical reason—perhaps past experience has shown FMCSA siloing QA is more efficient or effective—the Court cannot second guess such expertise, but the agency must *state* its expert reasoning on the record. *See Walden Sec. v. United States*, 136 Fed. Cl. 216, 231 (2018) ("[T]he Court should not substitute its judgment to assess the relative merits of competing proposals . . ."). The agency has not stated any such reasoning regarding a QA role here, as its provided explanation only reiterates the team size issue. AR at 360 (RFQ) ("This spreads the team of 5 even more thin, which reduces software development capacity, and presents a significant performance risk to the program."). The Court therefore holds it was arbitrary and capricious for FMCSA to assign a separate "Decreases Confidence" for plaintiff's failure to include a QA role because the agency "entirely failed to consider an important aspect of the problem"—whether Harmonia's substitution of a QA specialist with a full-stack developer allowed the proposed team to perform the SOO's required automated regression testing and other QA tasks without undesirable tradeoffs. *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Court therefore holds it was arbitrary and capricious for FMCSA to assign a separate "Decreases Confidence" for plaintiff's failure to include a QA role because the agency "entirely failed to consider an important aspect of the problem"—Harmonia's substitution of a QA specialist with a full-stack developer allowed the proposed team to perform the SOO's required automated regression testing and other QA tasks. *See id.* The Court discusses the effect of this error *infra* Section XI.

## VII.   Whether the Agency Arbitrarily and Capriciously Assigned a "Decreases Confidence" for "Key Personnel" not Being Current Employees

The Court next analyzes the issue of whether the agency erred in its evaluation of plaintiff under the second factor, "Key Personnel." The Court asked plaintiff at oral argument whether finding the agency's decision under "Technical Approach" was not arbitrary and capricious would affect the Court's "Key Personnel" analysis. Tr. at 58:15–59:6. Plaintiff responded, "I think it would be difficult to establish prejudice, because even viewed in the totality of those ratings, I think that would be a challenge." *Id.* The Court evaluates the "Key Personnel" issue regardless of its findings on "Technical Approach." *See supra* Sections V–VI (analyzing "Technical Approach" issues); *infra* Section XI (analyzing whether the agency's

errors are harmless).

The parties disagree about whether it was arbitrary and capricious for the agency to consider Harmonia's ability to obtain additional employees when assessing its confidence in Harmonia's proposed "Key Personnel." Plaintiff argues the agency did not require "Key Personnel" to be current employees in the solicitation. Pl.'s MJAR at 23. The agency's solicitation required the offerors propose three "Key Personnel" and provide their resumes but did not specify whether they needed to be current employees of the offeror. AR at 72 (RFQ). To evaluate "Key Personnel," the agency indicated it would determine "the degree to which their qualifications meet or exceed the [g]overnment's needs." AR at 72 (RFQ). Plaintiff asserts it was arbitrary and capricious for the agency to assign a "Decreases Confidence" for failure to propose current employees when the solicitation did not require plaintiff do so. Pl.'s MJAR at 23. Intervenor argues the "Key Personnel's" ability to perform the work—and status as a current employee—is "intrinsic" to the agency's evaluation of sufficient "Key Personnel" capable of successfully completing the work. Int.'s Cross-MJAR at 19 (citing AR at 72 (RFQ)).

The agency's evaluation is not limited to the explicit requirements of the solicitation but extends to unstated factors that contribute to the explicit evaluation factors. *See NEQ, LLC v. United States*, 88 Fed. Cl. 38, 48 (2009). To succeed on an unstated criterion claim, plaintiff must show the agency "used a significantly different basis in evaluating the proposals than was disclosed." *Wellpoint Mil. Care Corp. v. United States*, 144 Fed. Cl. 392, 404 (2019), *aff'd*, 953 F.3d 1373 (Fed. Cir. 2020). The RFQ required the agency to evaluate whether the proposed "Key Personnel" were "adequate and appropriate" to "lead to the successful completion of all requirements within the solicitation." AR at 72. In its evaluation, the TEP indicated a concern about Harmonia's ability to secure the "Key Personnel" because they were not current employees: "While the offeror received a High Confidence rating for Key Personnel, based on the collective years of experience, at the time of submission none of the key personnel were current employees to the offeror. The deficiency in the offeror['s] available talent pool reduced the assurance to execute the Technical Approach." AR at 415 (Award Memorandum). It is reasonable for the agency to assume current employees are more likely to be available than prospective employees. Between proposal submission and contract performance, an individual not employed by plaintiff could become unavailable for employment. This unavailability could impact "successful completion" of the solicitation requirements. *See* AR at 72 (RFQ). By deriving a higher confidence from current employees over prospective employees, the agency is not evaluating on a "significantly different basis than was disclosed," as personnel unavailability could affect "successful completion" of the solicitation's requirements. *See Wellpoint Mil. Care*, 144 Fed. Cl. at 404. The agency's evaluation did, in fact, consider the "adequa[cy] and appropriate[ness]" of the vendors' proposed "Key Personnel," and it therefore did not "use[] a significantly different basis in evaluating the proposals." *Wellpoint Mil. Care*, 144 Fed. Cl. at 404; AR at 72 (RFQ). The Court accordingly finds it was not arbitrary and capricious for the agency to consider a bidder's ability to obtain employees to complete the work when determining its confidence in the bidder's proposed "Key Personnel" and assign plaintiff a "Decreases Confidence" because its "Key Personnel" were not current employees. *See Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009); *NEQ*, 88 Fed. Cl. at 48; *Wellpoint Mil. Care*, 144 Fed. Cl. at 404; *see also Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011).

The parties further disagree about whether the agency arbitrarily applied its standard of assessing a "Decreases Confidence" for failure to propose current employees as "Key Personnel." Two bidders besides plaintiff proposed "Key Personnel" who were not current employees: [XXXXX] and [XXX]. AR at 203 (Resume for [XXXXX]'s proposed SDL), 205 (Resume for [XXXXX]'s proposed SDS), 207 (Resume for [XXXXX]'s proposed BAS), 306 (Resume for [XXX]'s proposed SDL), 308 (Resume for [XXX]'s proposed SDS), 310 (Resume for [XXX]'s proposed BAS). The agency indicated a concern about Harmonia's failure to propose current employees as "Key Personnel." AR at 361 (Harmonia Evaluation). The agency did not indicate the same concern about [XXXXX] or [XXX]. AR at 359 ([XXXX] Evaluation), AR at 365 ([XXX] Evaluation). When this court evaluates a bid protest, "the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial." *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4)); *see also Sys. Application & Techs., Inc. v. United States*, 100 Fed. Cl. 687, 711 (2011). In failing to apply the same standard to the same facts, as the agency did here in penalizing only Harmonia for a weakness two other offerors shared, FMCSA "offered an explanation for its decision that runs counter to the evidence before the agency." *Ala. Aircraft*, 586 F.3d at 1375 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). While a very minor difference in the greater evaluation, the Court finds it was arbitrary and capricious for the agency to assign Harmonia a "Decreases Confidence" but not [XXXXX] and [XXX] when all three bidders proposed "Key Personnel" unemployed by their companies. *See id.*; *Glenn Def.*, 720 F.3d at 907; *see also Sys. Application*, 100 Fed. Cl. at 711.

The Court holds it was not arbitrary and capricious for FMCSA to assign Harmonia's proposal a weakness for "Key Personnel" not being current employees. *See Ala. Aircraft*, 586 F.3d at 1375; *see also Allied Tech.*, 649 F.3d at 1326; *Ginn Grp.*, 159 Fed. Cl. at 601 (2022) (holding an agency's technical evaluation "falls within a special category of 'discretionary determinations' that the Court will not second guess" (quoting *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996))). The Court finds the standard was arbitrarily applied, however, because the agency indicated failure to propose current employees as "Key Personnel" decreased its confidence in Harmonia's proposal but not [XXXXX]'s or [XXX]'s proposals. *See Ala. Aircraft*, 586 F.3d at 1375; *NEQ*, 88 Fed. Cl. at 48; *see also Allied Tech.*, 649 F.3d at 1326. The Court discusses the effect of this error *infra* Section XI.

## VIII. Whether the Agency Arbitrarily and Capriciously Assigned Three "Increases Confidences" for Experience to SFI

The next issue is the assessment of three "Increases Confidences" to intervenor for prior experience. The Court notes plaintiff agreed at oral argument a ruling against plaintiff on the "Technical Approach" evaluation of Harmonia would make it difficult to establish prejudice on the remaining issues. *See* Tr. at 57:6–11 ("[PLAINTIFF]: . . . [I]f Your Honor is inclined to . . . disagree with our position on this 'Low Confidence' rating, it's not necessarily clear to me . . . the other ratings, standing alone, can establish prejudice.").

The parties dispute whether the agency erred in assigning three "Increases Confidences"

to intervenor for "Technical Approach" because three of the four "Increases Confidence" areas reflect similar language in intervenor's quote.[5]  Plaintiff argues the evaluation's three "Increases Confidences" correspond "word-for-word" to three consecutive sentences in intervenor's quote, and the agency therefore provided no analysis or rationale.  Pl.'s MJAR at 23–24 (first citing AR at 362 (SFI Evaluation); and then citing AR at 260 (SFI's Quote)).  Plaintiff cites no caselaw for the premise the agency may not copy language from an offeror's quote in assigning an "Increases Confidence."  *See id.*  Plaintiff is also incorrect in stating the evaluation copies the quote "word-for-word," as some words have been changed.  *Compare, e.g.*, AR at 362 (SFI Evaluation) ("*The offeror* offers FMCSA relevant expertise based on [*X*]+ years of successful IT support to Department of Transportation modal agencies including [XXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXX].") (emphasis added), *with* AR at 260 (SFI's Quote) ("*SFI* offers FMCSA relevant expertise based on [*X*] years of successful IT support to Department of Transportation modal agencies including [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX].") (emphasis added).  This solicitation is pursuant to FAR Subpart 8.4 rather than FAR Part 15 and therefore does not have the same requirements; only a "brief explanation"—not an *original* explanation—is required.  AR at 33 (RFQ) ("Conducted under Federal Acquisition Regulation (FAR) 8.4"); FAR 8.405-2(d) ("If an unsuccessful offeror requests information on an award that was based on factors other than price alone, a brief explanation of the basis for the award decision shall be provided.").  The agency's explanations of its "Increases Confidences" for intervenor, despite the use of highly similar language to intervenor's quote, meet the standard set by the FAR because they make clear the specific prior experience the agency found was likely to make intervenor successful in performing the contract under its "Technical Approach."  *See* FAR 8.405-2(d); AR at 362 (SFI Evaluation).  The Court therefore finds plaintiff has not shown it was arbitrary and capricious for the agency to use similar language to intervenor's quote in explaining its "Increases Confidences" for intervenor.  *See Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011).

The parties additionally dispute whether the agency's assignment of the three "Increases Confidences" based on prior experience was arbitrary and capricious.  Plaintiff contends the "Increases Confidences" relate to prior experience, which is not required by the solicitation and therefore an unstated evaluation criterion.  Pl.'s MJAR at 24–25.  Plaintiff further asserts, "Prior experience should not be a factor unless it relates to the specific systems and applications in this procurement.  The sentences the Agency cites do not clearly indicate that specific a tie."  *Id.* at

---

[5] Those three "Increases Confidences" are:

> 1.  Page 1, Section 1 – The offeror offers FMCSA relevant expertise based on [X]+ years of successful IT support to Department of Transportation modal agencies including [XXXXXXXXX XXXXXXXXXXXXXX].
> 2.  Page 1, Section 1 – The offeror is the current contractor for the FMCSA [XXXXXXXXXX XXXXXX] contract, where they [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXX].
> 3.  Page 1, Section 1 – The offeror has a comprehensive understanding of FMCSA's and OST's IT infrastructure and systems operating [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX].

AR at 362 (SFI Evaluation).

25. To succeed on an unstated criterion claim, plaintiff must show the agency "used a significantly different basis in evaluating the proposals than was disclosed." *Wellpoint Mil. Care Corp. v. United States*, 144 Fed. Cl. 392, 404 (2019), *aff'd*, 953 F.3d 1373 (Fed. Cir. 2020). While prior experience was not an evaluation factor, the RFQ stated the agency would evaluate whether "[t]he Quote includes a satisfactory level of understanding of the technical requirements and tasks listed in the SOO and [has] a strong and *proven* technical approach for performing the requirements." AR at 72 (emphasis added). The agency therefore did not "use[] a significantly different basis in evaluating the proposals" because intervenor's experience with DOT agencies, experience with another FMCSA contract, and "comprehensive understanding of FMCSA's and OST's IT infrastructure and systems" are related to the stated evaluation criteria because they demonstrate intervenor's "understanding of the technical requirements" and "proven technical approach." *Wellpoint Mil. Care*, 144 Fed. Cl. at 404; AR at 362 (SFI Evaluation); AR at 72 (RFQ). The Court therefore finds plaintiff has not shown it was arbitrary and capricious for the agency to assign "Increases Confidences" to intervenor for prior experience. *See Allied Tech*, 649 F.3d at 1326.

The parties further dispute whether the agency erred in assigning three separate "Increases Confidences" rather than one. Plaintiff argues intervenor's quote did not consider the three "Increases Confidences" "as separate strengths, as evidenced by the fact that they are the first three sentences in part of an introductory paragraph[, yet] the Agency credited them separately, which unfairly inflated SFI's confidence rating." Pl.'s MJAR at 25. Plaintiff cites no caselaw to support this argument. *See id.* The three "Increases Confidences" facially cover different topics related to past experience: (1) length of experience with DOT agencies; (2) current IT contract(s) with the agency; and (3) understanding of the agency's infrastructure and systems. AR at 362 (SFI Evaluation). The Court declines to "substitute its judgment for that of the agency." *PricewaterhouseCoopers Pub. Sector, LLP v. United States*, 126 Fed. Cl. 328, 350 (2016). The Court therefore finds plaintiff has not shown it was arbitrary and capricious for the agency to assign three separate "Increases Confidences" to intervenor for prior experience rather than one. *See id.*; *Allied Tech.*, 649 F.3d at 1326.

## IX.    Whether the Agency Arbitrarily and Capriciously Failed to Assign a Performance Risk to SFI

In briefing, plaintiff argued the agency erred in failing to assign a performance risk to intervenor based on intervenor's performance of an FAA contract. Pl.'s MJAR at 26. Plaintiff relied on a news article that was not part of the AR. *Id.* (citing David Shepardson, *U.S. FAA Revokes Access to System for Contractors Involved in Computer Outage*, Reuters (Jan. 25, 2023) (last visited Aug. 15, 2023)). At oral argument, plaintiff withdrew its argument regarding the agency's failure to assign a performance risk to intervenor. Tr. at 68:18–22 ("THE COURT: . . . [D]oes plaintiff withdraw this issue[,] then[,] on the basis of even being able to consider the article? [PLAINTIFF]:  . . . [W]e withdraw the argument . . . ."). The Court therefore does not analyze this issue. *See id.*

## X.    Whether the Agency Arbitrarily and Capriciously Employed Price Realism

The next issue is the agency's method of price evaluation. The Court notes plaintiff

stated at oral argument if the Court rules against plaintiff on the Technical Approach evaluation of Harmonia, this issue does not survive. Tr. at 83:9–21 ("THE COURT: . . . . [W]hile plaintiff's price was the lowest, if there were concerns on shortfalls and performance risk, then, without recalculating a number, the agency could logically conclude that the offered price was not a fair price?  [PLAINTIFF]:  Yes, Your Honor.  This is inextricably intertwined with the technical approach factors. . . .  [I]f the Court were to side with the agency on the first point, then I don't think this issue survives as the second point, because the agency's conclusion is . . . five is not good; seven is better.").  While the Court agrees with plaintiff, the Court nevertheless evaluates the price evaluation issue regardless of its findings on "Technical Approach."  *See supra* Sections V–VI (analyzing "Technical Approach" issues); *infra* Section XI (analyzing whether the agency's errors are harmless).

The parties dispute whether the solicitation allowed for a price realism analysis. Harmonia emphasizes the significant difference between making a determination of price realism and reasonableness.  Pl.'s MJAR at 27.  Plaintiff states price realism examines the performance risk of proposals in a fixed-contract procurement, whereas reasonableness considers whether the prices are too high.  *Id.* (first citing *KWR Constr., Inc. v. United States*, 124 Fed. Cl. 345, 356 (2015); and then citing *Munilla Constr. Mgmt., LLC v. United States*, 130 Fed. Cl. 635, 649 (2017)).  A price realism analysis is preformed only if the solicitation requires one; here, plaintiff contends, it does not.  *Id.*  Plaintiff cites FAR Section 15.404-1(d) as requiring an evaluation of whether prices "reflect a clear understanding of the requirements" for a realism analysis.  *Id.* At 26–27.  The solicitation provides for the "Price Evaluation" factor, "[t]he Government w[ould] evaluate the proposed prices to determine if the prices are fair and reasonable for the work proposed, in accordance with the contractor's SWES Pricing Schedule, *reflect a clear understanding of the requirements*, and are consistent with the methods of performance described in the quotes technical approach."  AR at 72 (RFQ) (emphasis added).  Plaintiff stated at oral argument FAR Part 15, which plaintiff cites as defining price realism, does not apply to this solicitation.  Tr. At 69:9–14 ("THE COURT:  Does the RFQ integrate in any way or mention FAR Part 15? [PLAINTIFF]:  No.  THE COURT:  So what application does FAR Part 15 have to the RFQ? [PLAINTIFF]:  None, Your Honor.").  The solicitation, however, includes the same language as FAR Part 15:  "reflect a clear understanding of the requirements."  *Compare* AR at 72 (RFQ), *with* FAR 15.404-1(d).  Plaintiff stated at oral argument that language "would implicitly trigger a price realism analysis."  Tr. At 75:4–5.  Although the solicitation does not invoke all the requirements of FAR Part 15 nor explicitly say "price realism," the solicitation does implicitly require a price realism analysis by using language requiring an evaluation of whether the prices "reflect a clear understanding of the requirements."  *See* AR at 72 (RFQ); FAR 15.404-1(d)(1).  FAR Part 15 has additional requirements for when a realism analysis can be used in fixed-price solicitations.  *See* FAR 15.404-1(d)(3) ("Cost realism analyses may also be used . . . , in exceptional cases, on [non-incentive] competitive fixed-price-type contracts when new requirements may not be fully understood by competing offerors, there are quality concerns, or past experience indicates that contractors' proposed costs have resulted in quality or service shortfalls.").  The Court does not impose all the FAR Part 15 requirements because the solicitation does not incorporate FAR Part 15; the Court instead analyzes whether the agency followed the directive of the solicitation:  "evaluate the proposed prices to determine if the prices . . . reflect a clear understanding of the requirements."  AR at 72 (RFQ).

The agency's price analysis partly attributed plaintiff's low price to its small team size, which contributed to its "Low Confidence" rating under the "Technical Approach" factor, and found plaintiff's price "does not demonstrate a clear understanding of the requirements." AR at 369 (Price Evaluation).[6]  The agency therefore tied its evaluation of plaintiff's price to its evaluation of plaintiff's understanding of the technical requirements.  *See id.*  The connection of the price analysis to the technical analysis shows the agency did exactly as the solicitation said: "evaluate the proposed prices to determine if the prices . . . reflect a clear understanding of the requirements." AR at 72 (RFQ); *see* AR at 369 (Price Evaluation).  The Court therefore finds plaintiff has not shown it was arbitrary and capricious to perform a price realism analysis in this way.  *See Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011).

In briefing, plaintiff further argued the agency's price realism failed because of a lack of sufficient explanation regarding the agency's underlying technical analysis of plaintiff's proposed solution.  Pl.'s MJAR at 29.  At oral argument, plaintiff acknowledged the price evaluation issue "is inextricably intertwined with the technical approach factors." Tr. at 83:4–21. For the same reasons the Court finds the agency sufficiently explained its "Decreases Confidence" and "Risk" findings regarding plaintiff's small team size, *see supra* Section V, the Court finds plaintiff has not shown it was arbitrary and capricious for the agency to find plaintiff's proposed solution did not "reflect a clear understanding of the requirements" in the price analysis.  *See Allied Tech.*, 649 F.3d at 1326–28.

## XI.   Whether the Agency's Source Selection and Best Value Determinations Were Arbitrary and Capricious

The next issue is the agency's source selection and best value determinations.  The Court will analyze the parties' arguments as well as whether the agency errors discussed *supra* Sections VI and VII are *de minimis* or prejudice plaintiff.  Although the Court finds the agency erred in assessing "Decreases Confidences" for the QA role issue under "Technical Approach" and the arbitrary application of the current employee standard under "Key Personnel," the Court must consider whether those errors render the agency's overall source selection and best-value determinations arbitrary and capricious.  *See supra* Sections VI–VII.

The parties dispute whether the agency's error in assigning a "Decreases Confidence" for the lack of a QA role is *de minimis*.  "De minimis errors are those that are so insignificant when considered against the solicitation as a whole that they can safely be ignored and the main

---

[6] The agency's price evaluation provides:

> Harmonia received an overall rating of Low Confidence by the Technical Evaluation Panel, and their price quote offers FMCSA a team of five (5) full-time equivalent (FTEs), which is lower than the government's IGCE by two (2) FTEs. . . .  For the overall cost proposed during the base and two (2) option years, the offeror's cost is [XXXXX], which is approximately [XX] lower than the government's IGCE.  The lower cost can be attributed to the offeror proposing two (2) less FTEs and having some low proposed labor rates.  In accordance with Factor 3:  Price Evaluation of the RFQ, the offeror's price is unreasonable and does not demonstrate a clear understanding of the requirements.

AR at 369.

purposes of the contemplated contract will not be affected if they are." *Andersen Consulting v. United States*, 959 F.2d 929, 935 (Fed. Cir. 1992). Plaintiff argues the agency would have given plaintiff a higher "Technical Approach" rating if not for the "Decreases Confidences" assessments under "Technical Approach." Plaintiff compares the number of "Decreases Confidences" and "Risks" in its evaluation to those of other offerors and contends the overall ratings are irrational. Pl.'s MJAR at 30 ("Harmonia also had fewer 'Decreased Confidence' and 'Risk' notations than [XXXXX] and [XX]." (citing AR at 355 (TEP Report)), 32. The Court, however, will not engage in calculating an agency rating by counting "Decreases Confidences," as plaintiff does, because this court has rejected such an approach. *See EFW, Inc. v. United States*, 148 Fed. Cl. 396, 409 (2020) (finding protester's simple count of strengths and weaknesses conflated solicitation's qualitative approach with a quantitative one); *McConnell Jones Lanier & Murphy LLP v. United States*, 128 Fed. Cl. 218, 231 (2016) (holding "common sense counsels that the strengths and weaknesses identified in each proposal are not fungible—some strengths would be more important than others to the [agency's] success, and some weaknesses would pose greater risks"). The explanation for the "Decreases Confidence" related to the lack of a QA role confirms the agency's technical analysis of plaintiff's proposal focused on the ability of the small team to complete the required work: "This *spreads the team of 5 even more thin*, which reduces software development capacity, and presents a significant performance risk to the program." AR at 360 (emphasis added) (Harmonia Evaluation). As the focus on the agency's technical evaluation was on team size, not the lack of QA role, error regarding the lack of explanation for the QA role "Decreases Confidence" is "so insignificant when considered against the solicitation as a whole that [it] can safely be ignored and the main purposes of the contemplated contract will not be affected." *Andersen Consulting*, 959 F.2d at 935. Despite the erroneous "Decreases Confidence" for the lack of a QA role, the agency's assessment of a "Decreases Confidence" and a "Risk" for Harmonia's small team size and corresponding "Low Confidence" rating for "Technical Approach" were rational, s*ee supra* Section V, and the Court finds the agency's overall rating of "Low Confidence" for "Technical Approach" was reasonable and not contrary to the record. *See* AR at 360 (Harmonia Evaluation). The Court therefore finds the agency's error in assigning a "Decreases Confidence" is *de minimis* and insufficient to sustain this protest. *See Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996) ("Not every error compels the rejection of an award. . . . We have held that *de minimis* errors do not require the overturning of an award." (citations omitted)); *Andersen Consulting*, 959 F.2d at 935.

The parties also disagree about whether the agency's assignment of a "Decreases Confidence" prejudiced plaintiff and whether, without this weakness, the TEP's "High Confidence" rating for "Key Personnel" would be different. Plaintiff argues the "Decreases Confidence" was detrimental to Harmonia as it pertains to the agency's source selection. Pl.'s MJAR Resp. & Reply at 10 ("The negative finding exists and was considered in the source selection decision."). At oral argument, however, plaintiff stated if the Court did not find the agency's technical findings arbitrary and capricious, then it was unlikely plaintiff could demonstrate prejudice on any of the remaining issues. *See* Tr. at 57:6–11 ("[PLAINTIFF]: . . . [I]f Your Honor is inclined to . . . disagree with our position on this low confidence rating, it's not necessarily clear to me . . . the other ratings, standing alone, can establish prejudice.").

FMCSA relied on the TEP's findings to make its source selection decision, and the TEP's

finding on "Key Personnel" cannot improve from a "High Personnel" rating; plaintiff's overall likelihood of award accordingly could not improve based on the "Key Personnel" error. There is no higher rating for plaintiff to receive on the "Key Personnel" factor, and the "Low Confidence" rating on the most important factor remains, so plaintiff would not "have been 'within the zone of active consideration'" even without the "Key Personnel" "Decreases Confidence." *Preferred Sys. Sols., Inc. v. United States*, 110 Fed. Cl. 48, 57 (2013) (quoting *Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl 16, 37 (2010), *aff'd*, 649 F.3d 1320 (Fed. Cir. 2011)); *see* Tr. at 108:6–7 ("[PLAINTIFF]: . . . [T]he 'Technical Approach' factor was more important than the 'Key Personnel' factor . . . ."). Even though the Court finds the agency erred in arbitrarily applying its standard regarding proposed "Key Personnel" not being current employees, *see supra* Section VII, plaintiff cannot demonstrate prejudice because neither of plaintiff's ratings for "Technical Approach" or "Key Personnel" would have changed absent the "Key Personnel" "Decreases Confidence." *See* Tr. at 108:6–7 ("[PLAINTIFF]: . . . [T]he 'Technical Approach' factor was more important than the 'Key Personnel' factor . . . ."). The Court therefore finds plaintiff was not prejudiced by the agency's "Decreases Confidence" finding on "Key Personnel." *See Preferred Sys. Solutions, Inc. v. United States*, 110 Fed. Cl. 48, 57 (2013); *see also Sys. Stud. & Simulation v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021).

The parties additionally dispute whether the TEP's "Technical Approach," "Key Personnel," and overall ratings are rational. In addition to the lack of explanation, plaintiff argues the ratings are irrational by comparing plaintiff's factor ratings and overall rating to those of other offerors. *See* Pl.'s MJAR at 30–31 ("Harmonia received the same High Confidence and Low Confidence rating as [XXXXXXXX], but it received a lower overall Confidence rating." (citing AR 355 (Harmonia Analysis))). At oral argument, however, plaintiff agreed "the 'Technical Approach' factor was more important than the 'Key Personnel' factor" and therefore "receiving 'High Confidence' for technical evaluation and 'Low Confidence' for 'Key Personnel,'" as [XXXXXXXX] did, "is very different than receiving 'Low Confidence' for 'Technical Evaluation' and 'High Confidence' for 'Key Personnel,'" as plaintiff did. Tr. at 107:20–25 (plaintiff's counsel responding "I understand Your Honor's point" regarding the difference in "Low Confidence" and "High Confidence" combinations for different factors); AR at 108:6–7 (plaintiff's counsel agreeing "Technical Approach" is more important than "Key Personnel"). Plaintiff further agreed the overall "Low Confidence" rating for plaintiff "could be a rational conclusion" if the "Technical Approach" rating is correct. Tr. at 107:4–10 ("[PLAINTIFF]: . . . [G]iven the technical rating is 'Low Confidence,' it's more important, and the 'Key Personnel' factor is 'High Confidence,' but it's less important, that 'Low Confidence' could be a rational conclusion one could reach, . . . setting our dispute [regarding the technical rating] aside . . . ."). Given the agency's "Low Confidence" rating under "Technical Approach," which the Court finds is not arbitrary and capricious, and the solicitation's statement "Technical Approach" is the most important factor, the Court finds plaintiff has not shown the TEP's "Technical Approach," "Key Personnel," and overall ratings are arbitrary and capricious. *See id.*; AR at 71 (RFQ); *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011).

The parties finally dispute whether the contracting officer ("CO") erred in accepting the TEP's technical findings without changing or adding to the TEP's analysis. At oral argument, plaintiff agreed this issue is related to the "Technical Approach" rating issue. Tr. at 99: 15–21

("THE COURT: . . . [I]f the technical evaluation consensus meeting and the TEP's ratings were rational, then was it rational for the source selection authority to quote them? [PLAINTIFF]: If Your Honor believes that the technical evaluator's findings were rational, the source selection decision is rational."); Tr. at 105:13–15 ("THE COURT: . . . [T]his issue is wrapped up in the technical evaluation of the employees just the same, correct? [PLAINTIFF]: Yes."). The Court evaluates the documentation issue regardless of its findings on "Technical Approach." *See supra* Sections V–VI (analyzing "Technical Approach" issues). Plaintiff claims the Source Selection Authority ("SSA")—who is also the CO—accepted the agency's evaluation with "no additional independent analysis." Pl.'s MJAR Resp. & Reply at 16; *see* AR at 127 ("The Contracting Officer (CO) will serve as the Selection Authority (SA) . . . ."). Plaintiff insists the CO's "mere[]" repetition of the report constitutes a failure to articulate a satisfactory explanation. Pl.'s MJAR at 30. Plaintiff cites *DigiFlight, Inc. v. United States*, 165 Fed. Cl. 588 (2023), for the premise documentation in the AR is required to justify the agency's evaluations. Pl.'s MJAR at 29. The issue in *DigiFlight*, however, was the government's indication it used a particular tool in part of its evaluation but did not include documentation on the use of that tool in the AR. 165 Fed. Cl. at 601–02. *DigiFlight* is distinguishable because plaintiff does not allege there is a *lack* of documentation regarding something FMCSA did as part of the evaluation, but rather plaintiff claims there is not *enough* documentation because the SSA should have provided additional explanation over the TEP's findings. *See id.*; Pl.'s MJAR at 30 ("[T]he [CO] approved the initial, arbitrary and capricious findings without analysis."). This solicitation is pursuant to FAR Subpart 8.4 rather than FAR Part 15 and therefore does not have the same requirements; only a "brief explanation"—not an *original* explanation—is required. AR at 33 (RFQ) ("Conducted under Federal Acquisition Regulation (FAR) 8.4"); FAR 8.405-2(d) ("If an unsuccessful offeror requests information on an award that was based on factors other than price alone, a brief explanation of the basis for the award decision shall be provided."). The SSA provided the "brief explanation" required by FAR Subpart 8.4 by reiterating the TEP's explanation—plaintiff's "lower cost can be attributed to the offeror proposing two (2) less FTEs and having some low proposed labor rates. In accordance with Factor 3: Price Evaluation of the RFQ, the offeror's price is unreasonable and does not demonstrate a clear understanding of the requirements"—and plaintiff cites no caselaw requiring "additional independent analysis" as *DigiFlight* does not require such explanation. *See* FAR 8.405-2(d) ("If an unsuccessful offeror requests information on an award that was based on factors other than price alone, a brief explanation of the basis for the award decision shall be provided."); *DigiFlight*, 165 Fed. Cl. at 601–02; AR at 369 (Price Evaluation); AR at 418 (Award Memorandum); *see* Pl.'s MJAR at 29–30; Pl.'s MJAR Resp. & Reply at 16. The Court finds the TEP's overall ratings and explanation of pricing analysis are not arbitrary and capricious, *see supra* Section X, so it was rational for the SSA to rely on those ratings and explanations present in the record before the agency. *See Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) ("Courts have found an agency's decision to be arbitrary and capricious when the agency . . . offered an explanation for its decision that runs counter to the evidence before the agency . . . ."). The Court therefore finds plaintiff has not shown it was arbitrary and capricious for the SSA to rely on the TEP's findings. *See Allied Tech.*, 649 F.3d at 1326.

The Court finds the agency's error in assigning a "Decreases Confidence" is *de minimis* and insufficient to sustain this protest. *See Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996) ("Not every error compels the rejection of an award. . . . We have held

that *de minimis* errors do not require the overturning of an award." (citations omitted)); *Andersen Consulting*, 959 F.2d at 935 ("De minimis errors are those that are so insignificant when considered against the solicitation as a whole that they can safely be ignored and the main purposes of the contemplated contract will not be affected if they are."). The Court also finds plaintiff was not prejudiced by the agency's "Decreases Confidence" finding on "Key Personnel." *See Preferred Sys. Sols*, 110 Fed. Cl. at 57. Finally, the Court also finds plaintiff has not shown the TEP's "Technical Approach," "Key Personnel," and overall ratings arbitrary and capricious, nor was it arbitrary and capricious for the SSA to rely on the TEP's findings. *See Allied Tech.*, 649 F.3d at 1326.

## XII.    Plaintiff's Request for a Permanent Injunction

Plaintiff seeks injunctive relief "[p]ermanently enjoining performance based on the current evaluation and decision" and ordering the government to "perform a proper evaluation to make a reasonable award decision." Pl.'s MJAR at 34–35. This court considers the following factors when determining whether to issue a permanent injunction: "(1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004). If a plaintiff cannot succeed on the merits, however, the other factors are irrelevant. *See Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 357 n.32 (2001) ("Absent success on the merits, the other factors are irrelevant."), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003). Plaintiff does not succeed on the merits and is therefore not entitled to injunctive relief. The Court therefore does not consider the remaining factors and denies plaintiff's request.[7] *See Info. Tech.*, 51 Fed. Cl. at 357 n.32.

## XIII.    Conclusion

For the foregoing reasons, the Court previously: (1) denied plaintiff's Motion for Judgment on the Administrative Record; (2) granted the government's Cross-Motion for Judgment on the Administrative Record; and (3) granted intervenor's Cross-Motion for

---

[7] While the Court does not reach the injunction factors beyond the first, the government further argues public policy interests weigh against a permanent injunction as plaintiff employed "gamesmanship in the question-and-answer process." Gov't Cross-MJAR at 21. The government explains:

> Here, Harmonia asked FMCSA to estimate the FTEs required to perform these services. Despite FMCSA's recommendation, Harmonia proposed a smaller team without any meaningful explanation, and now protests FMCSA's determination that its team was insufficient. In effect, Harmonia seeks to be rewarded for ignoring the agency's answer to its own question. Harmonia's ask-and-protest strategy risks stifling future question-and-answer exchanges.

*Id.* The Court does not understand the government's policy argument in the context of this case. If Harmonia and other offerors had not asked the government about the estimated level of effort, the agency's estimate may not have been disclosed, and the Court's analysis on the "Technical Approach" evaluation could have reached a different result. *See supra* Section V. The question-and-answer process here demonstrates the importance of the government responding to offeror questions and offerors explaining any departures from the government's answers in their proposals.

Judgment on the Administrative Record.  *See* 28 July 2023 Order, ECF No. 48.[8]  The Court **DIRECTS** the Clerk to enter judgment accordingly.

        **IT IS SO ORDERED.**

                                        s/ Ryan T. Holte
                                        RYAN T. HOLTE
                                        Judge

---

[8] "Based on all briefing and careful consideration after oral argument, the Court **DENIES** plaintiff's Motion for Judgment on the Administrative Record, ECF No. 33, and **GRANTS** the government's Cross-Motion for Judgment on the Administrative Record, ECF No. 38, and intervenor's Cross-Motion for Judgment on the Administrative Record, ECF No. 37."  28 July 2023 Order at 1–2.